# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 2, 2010

No. 09-40887

Lyle W. Cayce
Clerk

SHAUNA J. SAENZ,

Plaintiff - Appellant

v.

HARLINGEN MEDICAL CENTER, L.P.; MEDCATH INCORPORATED,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DEMOSS, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant Shauna Saenz ("Saenz") appeals the district court's grant of summary judgment on her Family Medical Leave Act ("FMLA") claims against Harlingen Medical Center ("Harlingen"). Saenz contends that the district court erred when it granted summary judgment on the grounds that Saenz failed to comply with Harlingen's in-house FMLA notice procedure. Although this is a close question, we agree that the district court erred when it held Saenz to Harlingen's heightened in-house procedure, and, further, we conclude that Saenz provided the minimum required notice under FMLA's default requirements. Accordingly, we REVERSE the judgment of the district court and REMAND.

No. 09-40887

## I. FACTUAL & PROCEDURAL BACKGROUND

The court must view the facts developed below in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006). Saenz was hired by Harlingen on December 31, 2003. In June 2006, Saenz was diagnosed with partial complex epileptic seizures. Saenz's seizures cause her to lose consciousness and, hence, become unable to perform her duties. In light of her condition, Saenz requested intermittent FMLA leave for her seizure condition. Harlingen, by way of its third-party administrator, The Hartford, granted Saenz's request in a letter dated August 26, 2006.

The letter informed Saenz that she was approved for intermittent leave "for a serious medical condition" for the period from July 24, 2006 to July 24, 2007. The letter also stated that Saenz had to contact Harlingen by calling The Hartford no later than two days after each time she took leave pursuant to her intermittent leave request. The letter warned that failure to provide the necessary notice could result in the loss of her protection under the FMLA.

Saenz availed herself of this grant of intermittent leave nine times between July 24, 2006 and December 26, 2006. In each instance, she properly sought and received approval for her leave within the prescribed period and received an approval notice. All of the correspondence approving her various requests for leave included the following warning: "Please remember that it is your obligation to contact The Hartford no later than 2 days after your leave date to report each date and time that you are absent from work relating to your intermittent [FMLA leave]." Saenz's supervisor, Amy Flores ("Flores"), testified that she personally informed Saenz every time Saenz called-in sick that Saenz needed to indicate whether her absence was related to her FMLA-qualifying condition and that Saenz needed to contact The Hartford.

On December 25 and 26, 2006, Saenz missed work due to her seizure condition. Saenz promptly contacted The Hartford, reported her FMLA-related

2

absences, and received an approval notice shortly thereafter. Saenz again missed work on December 29-31 and January 3-4. The circumstances of this bout of illness differed significantly from the seizure issues causing Saenz's absence only a week before. On December 28, 2006, Rhonda Galloway ("Galloway"), Saenz's mother, found Saenz hallucinating and disoriented at her house. Galloway determined that Saenz could not work that day and contacted Saenz's supervisor, Flores. Galloway told Flores about Saenz's symptoms and that she would not be able to work. Flores asked Galloway to call House Supervisor Debbie Morturi ("Morturi") and advise her of Saenz's absence. Flores then removed Saenz from the work schedule and informed Saenz's supervisor that Saenz would not be reporting for work.

Per Flores's request, Galloway contacted Morturi. Morturi recommended that Galloway take Saenz to Harlingen's emergency room. Galloway then brought Saenz to the hospital and reported her condition to the doctors on duty. Notably, Morturi personally came and visited Saenz while she was in the emergency room.

A psychiatrist was brought in to meet with Galloway and Saenz. During that meeting, the psychiatrist recommended that Saenz be transferred to the McAllen Behavioral Center for evaluation and treatment. Due to Saenz's incapacity, Galloway sought and received a court order permitting the transfer. Saenz testified that she has little recollection of the events of December 28 and 29. After three days, Saenz was released from the McAllen Behavioral Center. She was prescribed several medications and instructed to seek additional evaluation and treatment at another facility, Tropical Texas, as soon as she could arrange an appointment. She went to her mother's home and resided there in her care until at least January 2.

No. 09-40887

On the day of Saenz's discharge, Galloway again contacted Flores.[1] Galloway told Flores about Saenz's treatment at the Harlingen emergency room and McAllen Behavioral Center.[2] Galloway also informed Flores that Saenz needed to be taken off the schedule for a while, but she could not tell Flores when Saenz would be able to work again. Flores reminded Galloway that Saenz was required to contact The Hartford, and she asked Galloway to have Saenz contact her as soon as she was able. Flores then removed Saenz from the work schedule for the time period of December 10, 2006 through January 6, 2007. Flores wrote an "S" on the schedule where Saenz would have been required to work to indicate Saenz was sick.

Also on December 31, 2006, Flores received an email sent from Saenz's work email address requesting paid days off for December 25 and 26, 2006. The reason for the request stated that Saenz had been in the hospital. Saenz's counsel conceded at oral argument that Saenz was the originator of the December 31 email. Flores attempted to contact Saenz by telephone following her receipt of the email on at least two separate occasions, but she was unable to reach her.

---

[1] The testimony conflicts as to whether Galloway contacted Flores or Flores contacted Galloway. The identity of the initiating party is irrelevant to any of the issues before the court.

[2] The substance of the information communicated to Flores on December 31 is also disputed. In its briefing, Harlingen claims that Galloway merely told Flores that Saenz would be absent "for some unknown length of time for some unknown reason." Galloway's testimony is ambiguous and could be construed in this way. Nonetheless, Flores affirmatively testified that Galloway told her that Saenz had been hospitalized due to the symptoms she described in their December 28 phone conversation. She also testified that Galloway told her that Saenz "had been sent to another hospital" for additional treatment. As all disputed facts must be resolved in favor of the non-moving party, we are required to assume that Galloway communicated the notice-supporting information described by Flores rather than the less detailed information described by Galloway.

4

Some time between January 7 and January 9, Saenz went to meet with a psychiatrist at Tropical Texas.[3] She was diagnosed with bipolar disorder and depression. In total, she was absent from work on December 29, 30, and 31, 2006, as well as January 3 and 4, 2007, due to this second illness.

Saenz called The Hartford regarding her absences on January 9, 2007. During that call, she told The Hartford about her diagnosis for bipolar disorder and depression and her stay at the McAllen Behavior Center. Saenz then requested approval for intermittent FMLA leave for her newly diagnosed condition. By letter dated January 18, 2007, The Hartford began processing a new request for intermittent leave on Saenz's behalf and requested the submission of medical certification documents. The Hartford processed her request in the same way it had addressed her seizure-related request six months earlier.

Saenz also received a letter from Harlingen dated January 18, 2007. In it, Harlingen informed Saenz she was "being involuntarily terminated from Harlingen Medical Center effective immediately" due to her non-FMLA approved absences. The letter explained that Saenz had been required to contact The Hartford on January 2, 2007—two days following her release. After her termination, Saenz made no effort to furnish the medical certification documentation requested by The Hartford in its January 18 letter.

Saenz sued Harlingen and Medcath Incorporated ("Medcath") in state court; the defendants removed the case to federal court and then moved for summary judgment. In an order dated July 31, 2009, the district court granted

---

[3] The exact date of Saenz's follow-up appointment is unclear from the record. Galloway testified that she was uncertain as to the date of Saenz's appointment and that it could have been anywhere from seven to ten days after her release from McAllen Behavioral Center. When asked if the doctor's visit was on January 7, Galloway testified: "I can't be sure on the date." As such, we decline to assume the appointment took place on January 7 as suggested by both Harlingen and the district court.

No. 09-40887

the motion for summary judgment as to Medcath on the grounds that Saenz failed to establish a genuine issue of material fact as to whether Medcath was a covered employer under the FMLA. The July 31 order expressly held over all questions relating to Harlingen to be addressed in a subsequent order after additional briefing. In an order dated August 3, 2009, the district court granted summary judgment as to Harlingen on all remaining claims. Saenz timely filed her notice of appeal on August 27, 2009.[4]

## II. STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo, applying the same standard as the district court. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). The inquiry "is limited to the summary judgment record before the trial court." *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009). The Court must view the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the movant has the burden of showing this court that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bolton*, 472 F.3d at 263; *see* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

---

[4] We note that Harlingen originally claimed that we lack jurisdiction to hear this appeal on the grounds that Saenz's notice of appeal was substantively deficient. At oral argument, Harlingen's counsel conceded that it was not prejudiced by the technical deficiencies in Saenz's notice of appeal and that its challenge to our jurisdiction based on that notice was not well-grounded.

## III. DISCUSSION

The instant case presents two interrelated issues. First, we must consider whether the district court erred when it relied upon our decision in *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840 (5th Cir. 2007), to conclude that Saenz was required to comply with Harlingen's internally-created heightened FMLA notice requirements. Second, dependent upon the outcome of that inquiry, we must decide whether Saenz provided adequate notice in keeping with Harligen's procedures or the more relaxed default FMLA standard. We address each issue in turn.[5]

### A. *Whether the district court erred in its conclusion that Saenz was required to comply with Harlingen's in-house FMLA procedures*

Citing Saenz's nine prior uses of FMLA leave, the district court concluded that Saenz knew she was required to contact The Hartford within two days of her absence and, hence, her failure to do so forfeited her protections under the FMLA. The district court concluded that this outcome was required by our decision in *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840 (5th Cir. 2007). *Greenwell* addressed a different situation than our case and, thus, is factually distinguishable. We conclude that the district court erred in strictly enforcing Harlingen's FMLA procedures on the facts of this case.

The district court found that Saenz had extensive knowledge of Harlingen's FMLA procedures by way of her earlier absences. Relying on this undisputed knowledge and Saenz's history of unexcused absenteeism (presumably absences other than the FMLA-approved absences), the district court cited *Greenwell* for the proposition that "Saenz can be held to her

---

[5] In its briefing, Harlingen also alleged that Saenz's failure to submit medical certification for her absences following her termination constituted an alternative grounds for affirming the district court's grant of summary judgment. Harlingen's counsel conceded that this argument was without merit during oral argument before the panel. Accordingly, we do not address it.

employer's protocol before she will be found to have provided sufficient, timely notice of an FMLA-qualifying condition." *Greewell* does not paint with so broad a brush. In *Greenwell*, an employee with a history of both FMLA and unexcused absenteeism contacted her employer when she was required to miss work due to an injury to her child. 486 F.3d at 841. As the injury was not foreseeable, the employee had not been able to give advance notice of her absence. *Id.* The employee received verbal approval for her absence when she called into work. *Id.* When she returned to work, the employee refused to complete the necessary FMLA paperwork, and the employer subsequently terminated her. *Id.* The court, faced with Greenwell's affirmative refusal to comply, enforced the employer's policy because Greenwell had actual knowledge of the policy and offered no persuasive reason to justify setting it aside.

The instant case is different from *Greenwell* for three reasons. First, the *Greenwell* court took exception to Greenwell's failure to provide enough information for the employer to realize she was requesting FMLA leave.[6] As that court noted, "[Greenwell] never mention[ed] a FMLA-qualifying [medical condition] or [made] a request for FMLA leave" when she contacted her employer to say she would need to miss work. *Greenwell*, 486 F.3d at 842. In the instant case, Harlingen had an abundance of information. Saenz's mother contacted Harlingen on three separate occasions – two calls to Flores and one to Morturi. She conveyed enough information to Morturi to cause Morturi to suggest Saenz be taken to the emergency room. Morturi visited Saenz in the hospital and saw her condition first hand. Flores conceded in her deposition that she was told

---

[6] The Sixth Circuit recently distinguished *Greenwell* along these lines and refused to impose a heightened employer procedure where, as here, the employer had actual notice that an employee was suffering from a "serious health condition." *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 794 (6th Cir. 2009) (unpublished); *see also Slanaker v. Accesspoint Employment Alternatives, LLC*, No. 07-11024, 2008 U.S. Dist. LEXIS 10525, at *10-11 ( E.D. Mich. Feb. 13, 2008) (same).

about the transfer to McAllen Behavioral Center for additional medical treatment and the need for post-release treatment. Unlike the employer in *Greenwell*, Harlingen was not left to wonder what sort of medical problem caused Saenz's absence or whether that problem qualified for FMLA leave. Harlingen's extensive involvement in Saenz's treatment provided information far in excess of the minimums demanded by the *Greenwell* court.

Second, unlike in *Greenwell*, we cannot conclude on this record that Saenz affirmatively refused to comply with her employer's procedure. The *Greenwell* court was extremely concerned with Greenwell's affirmative refusal to comply with her employer's post-notice requirements.[7] The *Greenwell* court noted that "Greenwell's decision to not fill out the FMLA form also deprived [her employer] of the opportunity to 'determine that the leave qualifies under [FMLA].'" *Id.* at 843 (emphasis added) (second alteration in original). In fact, the "sharing of the

---

[7] Notably, the *Greenwell* court addressed the notice requirement in conjunction with its analysis of the post-notice certification. Implicit in the case is the suggestion that Greenwell's defective notice would have been excusable had she provided follow-up certification as requested. In the instant case, Harlingen's counsel conceded at oral argument that Saenz could not have been required to certify an absence after she was terminated. In fact, termination during the mandatory 15-day compliance period could itself be deemed a FMLA violation. *See Lubke v. City of Arlington*, 455 F.3d 489, 496-97 (5th Cir. 2006) (stating that 29 C.F.R. § 825.305(b) "requires" that the employer allow the employee at least 15 days to respond to the medical certification request); *see also Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 554-55 (6th Cir. 2006) (termination of employee six days into 15-day compliance period "was clearly a violation of the FMLA"); *Cooper v. Fulton County*, 458 F.3d 1282, 1286 (11th Cir. 2006) (termination of employee before the lapse of the 15-day compliance period deemed impermissible under FMLA); *Muhammad v. Ind. Bell Tel. Co.*, 182 F. App'x 551, 553 (7th Cir. 2006) (unpublished) (describing the 15-day compliance period as a prerequisite to adverse employment action); *Rhoads v. FDIC*, 257 F.3d 373, 383 (4th Cir. 2001) ("[T]he employer *must* allow the employee at least fifteen calendar days to submit [certification]." (emphasis added)); *but see Young v. Russell Corp.*, No. 2:08-CV-148, 2008 WL 5412782, *2 (M.D. Ala. Dec. 29, 2008) (noting that "[i]f the employee never produces the certification, the leave is not FMLA leave" where employee was afforded full 15-day period and failed to comply (quoting 29 C.F.R. § 825.311(b) (2003) (alteration in original)); *Tippens v. Airnet Sys., Inc.*, No. 2:05-CV-421, 2007 WL 1026954, *5 (S.D. Ohio Mar. 30, 2007) (finding that failure to submit medical certification was "fatal to a claim of FMLA interference" where employer granted temporary approval until lapse of 15-day period).

informational burden" discussed at that point by *Greenwell* and raised by Harlingen's counsel at oral argument actually cuts *against* Harlingen. Here, there is evidence in the record that Saenz made three efforts to contact Harlingen through her mother and then complied with the heightened company policy nine days later before missing any work other than the days taken off the calendar by Flores on December 31.

Finally, Saenz's knowledge alone of her employer's FMLA procedures does not justify holding her to a heightened standard. The *Greenwell* court justified imposing the employer's special heightened standards for two reasons. First, Greenwell admitted to consciously refusing to follow her employer's procedures. *Greenwell*, 486 F.3d at 843. On this limited summary judgment record, we have no such pre-termination refusal. Second, in *Greenwell* "no persuasive reasons for straying from [the employer's] FMLA procedures [existed]. . . ." *Id*. at 844. The court noted that Greenwell conceded her son's condition had not been severe, the family physician had no record of the incident because it was not a major incident, and, more generally, Greenwell never conveyed sufficient information for the employer to make an initial determination of FMLA qualification. *Id*. Saenz has made no similar concessions and there is at least some evidence in the record to support her argument that she was suffering from a severe psychiatric episode. She was hospitalized. She was placed under a judicially created guardianship for several days. She was released into her mother's care until January 2.[8] Much of this information was conveyed contemporaneously by way of her mother and Morturi's personal visit to allow Harlingen to make an initial FMLA qualification determination.

---

[8] Saenz also argues that she was prescribed Dilantin, Klonopin, and Trileptal. The summary judgment record, however, is utterly devoid of any medical evidence as to what effect these drugs had on her mental state during the relevant time period.

No. 09-40887

As such, *Greenwell* does not support holding Saenz to her employer's specific in-house procedures on the record here presented. We recognize that the summary judgment record is thin, and Harlingen may yet find evidence supportive of applying a heightened notice requirement. At the very least, however, Saenz has raised a fact issue as to whether the facts of this case support application of a heightened standard.

This conclusion does not end our inquiry, however, because if she failed to comply with the FMLA itself in giving notice, Harlingen may still have been entitled to summary judgment. Thus, we examine whether Saenz contacted Harlingen as soon as practicable herself or by way of an agent to provide enough information to allow Harlingen to recognize she was taking FMLA leave as required by the FMLA regulations. 29 C.F.R. § 825.303 (2008).[9]

*B. Whether Saenz adequately provided FMLA notice under 29 C.F.R. § 825.303*

The FMLA's more relaxed notice requirements are codified within the FMLA and § 825.303. In light of the requirements set forth in the applicable regulations and viewing the facts in the light most favorable to Saenz as the non-moving party, we find that Saenz provided satisfactory notice by way of Galloway's calls to Flores and Morturi on December 28, Morturi's presence in the emergency room, and Galloway's call to Flores on December 31.

---

[9] We agree with the district court's conclusion that the 2009 revisions to the FMLA regulations governing notice should not apply to the instant case. As the district court explained, "[r]etroactive application is permissible if it does not 'impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Saenz v. Harlingen Med. Ctr.*, No. B-08-101, at 3 n.1 (S.D. Tex. Aug. 03, 2009) (citing *Blaz v. Belfer*, 368 F.3d 501, 503 (5th Cir. 2004)). As aptly noted by the district court, the most salient regulatory change—the revisions to 29 C.F.R. § 825.303—arguably increases the duties imposed upon employees seeking FMLA leave. Were we to apply the new regulations, Harlingen might very well be entitled to summary judgment. As such, per *Blaz*, we decline to retroactively apply the new regulations, and all citations to the governing FMLA regulations refer to the pre-2009 Code of Federal Regulations edition.

The FMLA requires only that an employee contact her employer and state that leave is needed as soon as practicable under the facts and circumstances of the particular case.  29 C.F.R. § 825.303(a)-(b) (2008).  An employee need not expressly assert rights under the FMLA or even mention the FMLA.  *Id.*  Once an employee meets this low threshold, she is merely required to respond to reasonable employer inquiries for additional information.

On December 28, Galloway contacted Flores to inform her that Saenz would not be able to work due to a severe medical condition involving hallucinations and disorientation.  Galloway then contacted Morturi and provided the same information.  Morturi was sufficiently alarmed by Galloway's description to encourage her to bring Saenz to Harlingen's own emergency room.  Morturi then personally observed Saenz receiving treatment in the hospital where Saenz and Morturi worked.  Galloway again called Flores on December 31 and informed her that Saenz had missed work on December 29-31 because "[Saenz] had been in the emergency room and that she had been sent to another hospital" due to the condition Galloway had described to her on December 28.  She also informed Flores that she needed to remove Saenz from the schedule because Saenz was still suffering from the same condition and required additional treatment. Galloway did not provide an anticipated duration because she did not know how long Saenz would be incapacitated.

Harlingen cites two cases to suggest that, even under the more relaxed notice standards, Saenz loses.  First, Harlingen cites *Seaman v. CSPH, Inc.*, 179 F.3d 297 (5th Cir. 1999).  In *Seaman*, unlike here, the employee asked *in advance* for time off to seek treatment. *Seaman*, 179 F.3d at 302. The employee did not suffer any sort of medical emergency nor was he ever required to unexpectedly miss work due to his condition.  *Id.*  Moreover, he did not ever actually seek the treatment for which he requested time off.  In fact, his request for time off was described by the court as little more than an abstract inquiry

12

during a casual conversation with his employer. *Id.* The employee also conceded that he never told his employer that he needed the time to seek treatment for a serious medical condition in his subsequent requests. *Id.* In this case, Saenz was not prospectively seeking treatment when she required FMLA leave. Instead, she was so incapacitated that her mother had to request time off on her behalf and obtain a guardianship to transfer her to a psychiatric hospital. Additionally, Galloway's descriptions to Flores and Morturi were not, as the *Seaman* Court rejected, a mere "reference to [a] mental condition." *Id.* Instead, Galloway's various communications over the course of the December 28 and 31 conversations as well as Morturi's observations were sufficient to inform Harlingen that Saenz was suffering from a serious psychiatric condition.

Second, Harlingen points to this court's decision in *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973 (5th Cir. 1998), as another example of analogous insufficient notice. In *Satterfield*, the court determined that a note from the employee stating that she "was having a lot of pain in her side, and would not be able to work that day" was not sufficient to allow her employer to determine if she was suffering from a serious medical condition. *Satterfield*, 135 F.3d at 980-81 (quotation omitted). In the instant case, Galloway told Flores and Morturi that Saenz had been hospitalized and then transferred to an inpatient care facility for three days. As such, Galloway's calls, which described both Saenz's symptoms and the significant treatment she was receiving, cannot be equated to an off-hand note describing a single symptom without any additional context. The information provided by Galloway did not, in the *Satterfield* court's words, require her employer to be "clairvoyant" to ascertain whether FMLA might apply. *Id.* at 980. In the end, Harlingen has not adduced any similar authority suggesting communications like Galloway's should not be deemed to have sufficiently "[apprised] the employer of the request for time off for a serious health condition." *Seaman*, 179 F.3d at 302.

13

## IV. CONCLUSION

To conclude, we hold that the district court erred by applying the heightened requirements of *Greenwell* on the summary judgment record before it and that Saenz appears to have provided the minimum required notice under FMLA's default provisions. Accordingly, we REVERSE the district court's grant of summary judgment and REMAND for proceedings consistent with this opinion.