# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11174

United States Court of Appeals
Fif h Circuit

**FILED**

April 10, 2017

Lyle W. Cayce
Clerk

LONNY ACKER,

      Plaintiff - Appellant

v.

GENERAL MOTORS, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Lonny Acker is a General Motors, L.L.C. ("GM") employee who was approved for intermittent Family and Medical Leave Act ("FMLA") leave but on several occasions was absent from work and did not follow company protocol for requesting FMLA leave. He suffered several weeks of disciplinary unpaid layoff. He sued GM for FMLA interference and retaliation and for disability discrimination under the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"). The district court entered summary judgment for GM. We AFFIRM, principally because the FMLA and accompanying regulations require employees to follow their

No. 16-11174

employer's "usual and customary" procedures for requesting FMLA leave absent "unusual circumstances," 29 C.F.R. § 825.303(c).

## BACKGROUND

Acker began working for GM in the fall of 2000 at its automobile plant in Kokomo, Indiana. In summer 2014, he voluntarily transferred to the GM assembly plant in Arlington, Texas.   He is an electrician who typically works third shift.  Acker suffers from acute iron-deficiency anemia that sometimes causes him to experience blackouts, grayouts, heart palpitations, and fatigue. As a consequence, Acker was certified for intermittent medical leave under the FMLA by his physician.

GM has a detailed attendance policy.   The product of collective bargaining between GM and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, this attendance policy is codified in what is known as "Document No. 8—Memorandum of Understanding—Special Procedure for Attendance" ("Doc. 8").  As a current electrician covered by the collective bargaining agreement, Acker is subject to Doc. 8.

For an unplanned absence, the collective bargaining agreement simply requires employees to notify GM at least thirty minutes before the shift starts. Failure to call by the deadline is considered an "instance" under Doc. 8, unless the employee can explain the untimeliness satisfactorily to management. When absences are unexcused, GM allocates up to eight hours per instance of that employee's "Vacation Restricted" hours to each hour that the employee was absent.   Under this arrangement, employees are permitted up to five "instances" of unexcused absence before they become subject to discipline under the policy.  Acker testified that he understood this use of "Vacation Restricted" time as a "free pass."  After the "free" absences are used up, Doc. 8 imposes "Attendance Improvement Steps" for additional unexcused absences

2

through a six-step program that moves from two written warnings to unpaid disciplinary layoff to termination.

GM also has a policy for requesting FMLA leave. Union benefit representatives at each GM facility assist employees with FMLA leave requests. Employees must make an initial request for FMLA leave with GM's Benefits & Services center, administered by third-party vendor Sedgwick Claims Management Services, Inc. ("Sedgwick"). Once an employee has requested intermittent FMLA leave, Sedgwick sends the employee a letter reiterating GM's policies for requesting and taking leave. This policy is described in an employee letter as follows:

> If you have requested intermittent leave, you are required to report any time taken under the Family and Medical Leave Act (FMLA), at least 30 minutes PRIOR to the start of your normal scheduled work shift, by calling the GM Absence Call In Line [redacted] and selecting the "FMLA" option when prompted (option #8). You are also required to call the GM Benefits & Services Center at [redacted] by the end of your normally scheduled work shift to report your FMLA absence. When calling, select the prompt for "FMLA".

Acker testified that he was familiar with this procedure and received a packet including this letter.

By September 2014, Acker testified, he had used all of his "free pass" days. In mid-November 2014, Acker contacted Sedgwick to request FMLA leave. Acker received instruction from Sedgwick to obtain a medical certification by November 28, and he complied. On December 9, Sedgwick notified him that he was approved for intermittent FMLA leave from November 11, 2014 to May 11, 2015. Nevertheless, he began receiving discipline for several unapproved absences according to GM's procedures.

The record is undisputed concerning the disciplinary procedure GM followed and the facts underlying the discipline. Acker was absent from work on September 29 and received his first written disciplinary warning under Doc.

No. 16-11174

8 on October 7. Acker testified that he did not request FMLA leave for the September 29 absence. Acker was absent a month later, on October 30, and was disciplined with a second written warning a day later. Acker testified that he did not request FMLA leave for this absence, either.

Acker was absent again November 12, 13, and 14, which were counted as two "instances" of unexcused absence under GM's policy. Combined with the first two unexcused absences, Acker became subject to two weeks' unpaid suspension as a disciplinary layoff. Acker contacted Sedgwick to request FMLA leave for the November 12 and 13 absences, and his request was approved by Sedgwick. When GM was made aware of this approval, GM rescinded its disciplinary action for November 12 and 13. However, Acker testified that, for the November 14 absence, he failed to call in 30 minutes before his shift began and missed the FMLA absence call-in time by over an hour. For this November 14 default, GM treated the first week of the earlier disciplinary layoff, which Acker had already undergone, as discipline pursuant to Doc. 8.

Acker was also absent on November 22 and 23. Phone records produced by Acker confirm that none of his three calls to the GM shift absence line were timely. Acker was issued another disciplinary layoff with two weeks of unpaid suspension for these unexcused absences, in line with the Doc. 8 policy of progressive discipline.

Acker was absent again on December 6, 7, and 8. His absence for December 7 was approved because Acker timely called both the GM absence line and the GM Benefits & Services line. While Acker did contact the GM absence line for December 6 and December 8, he failed to contact the Benefits & Services line in time on both occasions. Thus on January 14, 2015, Acker was denied FMLA coverage for both days and issued a disciplinary layoff under GM policy, this time a 30 day unpaid suspension. Although the Doc. 8 policy

4

required Acker's termination for these additional unexcused absences, GM retained him with an opportunity to correct his attendance issues. The last disciplinary action GM had to take with respect to Acker's attendance was on January 14.

Since February 2015, Acker testified, he has taken more than 30 days of intermittent FMLA leave and managed to timely call the GM Absence and Benefits & Services lines according to the collective bargaining agreement. Nevertheless, Acker filed suit against GM in September 2015 for damages concerning the unpaid suspensions. After discovery, GM moved for and was granted summary judgment by the district court. Acker timely appealed.

## STANDARD OF REVIEW

"Summary judgment is required 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). Summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## DISCUSSION

Acker raises three issues on appeal. First, regarding his FMLA interference claim, he contends that his calls to GM and the Benefits & Services lines were sufficient to raise a genuine issue of material fact as to whether he provided reasonable notice of his need for unplanned FMLA leave. Second, he claims that the disciplinary layoffs were in retaliation for exercising his FMLA rights. Third, he argues that his request for FMLA leave was also a request for a reasonable accommodation for a disability under the ADA and TCHRA, and that the disciplinary layoffs thus also constituted disability discrimination.

No. 16-11174

## A. FMLA Interference

To prove an interference claim, a plaintiff "must at least show that [the defendant] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him]." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013)). An "interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006).

While the employee has a right to take leave under the FMLA, the employee must give his employer notice of his intention to take leave in order to be entitled to it. *See* 29 U.S.C. § 2612(e)(1) ("Requirement of notice"); (2) ("Duties of employee"). *See also* 29 C.F.R. § 825.303. When the need for leave is foreseeable, the employee generally "must provide the employer at least 30 days advance notice before FMLA leave is to begin." 29 C.F.R. § 825.302(a). If 30 days' notice is not practicable, "notice must be given as soon as practicable." *Id.* In all instances, "an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." *Id.* § 825.302(d). "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied." *Id.* This regulation "explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013).

Even when an employee's need for leave is unforeseeable, the regulations make clear the employee's duty to comply with the employer's policy. "When

the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). "[A]n employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA.*" *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008–09 (10th Cir. 2011). *See also Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) ("Employers who enforce [call-in] policies by firing employees on FMLA leave for noncompliance do not violate the FMLA.").

An employer may thus require that an employee hew to the employer's usual and customary procedures for requesting FMLA leave. Discipline resulting from the employee's failure to do so does not constitute interference with the exercise of FMLA rights unless the employee can show unusual circumstances. "Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations." *Twigg*, 659 F.3d at 1009; *Goff v. Singing River Health Sys.*, 6 F. Supp. 3d 704, 711 (S.D. Miss. 2014) (summary judgment is appropriate in FMLA case without evidence of unusual circumstances excusing employee's failure to call employer timely).

It is undisputed that Acker's phone records show he failed to call in timely under GM's procedure on the dates for which he received disciplinary layoff: November 14, 22, 23, and December 6 and 8. Acker cannot rely on his deposition testimony, inconsistent with phone records that he described as the "universe" of his calls during the relevant period, to create a fact issue on timeliness. *Vais Arms, Inc. v. Vais,* 383 F.3d 287, 294 (5th Cir. 2004) ("vague, self-serving statements" are "not sufficient to raise a genuine issue of material

fact"); *see also Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).  Thus, in order to establish FMLA interference, Acker has to show that for each of these non-FMLA-approved absences, unusual circumstances prevented him from following the union-negotiated procedures.  This he has not done.

Acker testified that his disability causes him to experience severe disorientation, blackouts, grayouts, heart palpitations, and extreme fatigue when in the acute phase, and that his disability can reach the acute phase suddenly and could constitute a sudden medical issue or emergency.  He offered no factual support, however, that he reached the acute stage or experienced a medical emergency on the days in question.  Indeed, he testified that he was too "dizzy" to follow GM's call-in procedure only on November 14, but he was given FMLA leave and was not disciplined under Doc. 8 for that absence.  He did not explain why "unusual circumstances" left him capable of calling one line, but not the other: on November 22, December 6, and December 8, Acker timely called the GM absence line, but failed to call the GM Benefits & Services line.  There is no proof that unusual circumstances arising from his condition prevented him from complying with GM's call-in policy with respect to one line but not the other.

Relying on *Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576 (5th Cir. 2010) as well as *Millea v. Metro-North R.R. Co.,* 658 F.3d 154 (2d Cir. 2011), Acker argues that failure to comply with an employer's usual and customary procedures cannot be grounds for discipline when the employee provides "reasonable" notice of an unforeseen absence.  He thus argues that there is a fact issue whether his (untimely) phone calls provided reasonable notice to GM irrespective of company policies.

Acker's reliance on these cases is misplaced.  First, the holdings in each of those cases are predicated on outdated, materially different regulations.  The

No. 16-11174

Sixth Circuit noted the material changes to the FMLA regulations that went into effect on January 16, 2009. *See Srouder*, 725 F.3d 608. Based on the previous regulations, the Sixth Circuit had held that the "FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." *Id.* at 613–614 (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713 (6th Cir. 2003). But the revised regulations explicitly allow employers to condition FMLA leave on following the employer's policy. *Srouder,* 725 F.3d at 614. Indeed, this court in *Saenz* acknowledged that the post-2009 regulations, if applicable, could have required summary judgment for the employer:

> the 2009 revisions to the FMLA regulations governing notice should not apply to the instant case . . . the most salient regulatory change—the revisions to 29 C.F.R. § 825.303—arguably increases the duties imposed upon employees seeking FMLA leave. Were we to apply the new regulations, [the employer] might very well be entitled to summary judgment . . . we decline to retroactively apply the new regulations, and all citations to the governing FMLA regulations refer to the pre-2009 Code of Federal Regulations edition.

*Saenz*, 613 F.3d at 582 n.9. The new regulations control the standard for this case, and Acker has not raised a fact issue for FMLA interference.[1]

## B. FMLA Retaliation

To prove FMLA retaliation, the employee must demonstrate: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought

---

[1] Likewise *Millea* involved an incident in 2006, three years before the material change in the regulations. *See* 658 F.3d at 159–60 (describing the relevant incident in 2006). In addition, that case is factually distinct because unlike here, where Acker did not follow the timing requirements of his employer's FMLA request policy, the employer in *Millea* "received timely, although indirect, notice of Millea's use of FMLA leave." *Id.*

9

protection under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

Acker cannot make a prima facie case. He has not shown how his disciplinary leave was caused by his attempts to seek protection under the FMLA instead of his failure to follow GM's attendance and absence approval process. Acker is still employed by GM. He has taken more than 30 days of intermittent FMLA leave since his last disciplinary layoff by following GM's call-in procedure. It is undisputed that GM's policy should have resulted in Acker's termination for his absence on December 6, but GM offered Acker the opportunity to correct his attendance problems. These undisputed facts belie any casual connection between his claimed adverse action and his attempt to seek FMLA leave.

### C. ADA/TCHRA

Acker also argues that in disciplining him for violation of the Doc. 8 procedures, GM failed to accommodate his disability by means of FMLA leave. He contends that his requests for FMLA leave, although made outside of the process GM provided, were simultaneously requests for a reasonable accommodation under the ADA, and concomitantly, the TCHRA.[2] Acker argues that because a request for medical leave generally is a request for an accommodation in some instances, a request for FMLA leave is also a request

---

[2] The Texas Supreme Court has held that the TCHRA can be interpreted in lockstep with the federal ADA. By adopting the TCHR, "the Legislature intended to correlate state law with federal law in employment discrimination cases . . . Therefore, we look to federal law to interpret the Act's provisions." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (quotations and citations omitted).

under the ADA.  The district court disagreed and held that Acker did not make a request for a reasonable accommodation.

Employees who require accommodation due to a disability are responsible for requesting a reasonable accommodation.  *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216 (5th Cir. 2011) (quoting *E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 621 (5th Cir. 2009)).  However, a request for FMLA leave is not a request for a reasonable accommodation under the ADA.  "The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief."  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001).  "FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision."  *Harville v. Tex. A&M Univ.*, 833 F. Supp. 2d 645, 661 (S.D. Tex. 2011) (citing *Trevino v. United Parcel Serv.*, No. 3:08–CV–889–B, 2009 WL 3423039, *12 (N.D.Tex. Oct. 23, 2009)).

Textual comparison of the FMLA with the ADA demonstrates why requesting FMLA leave alone is not a request for an ADA reasonable accommodation. An employee who requests FMLA leave asserts he has a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D) ("Entitlement to leave").  A request for a reasonable accommodation under the ADA is a claim that the employee "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8) ("Definitions: Qualified Individual").  *See Capps v. Mondelēz Global LLC*, 147 F. Supp. 3d 327, 340–41 (E.D. Penn. 2015) ("an employee who requests leave does not clearly communicate to her employer that she is disabled and desires an accommodation.") (quoting *Rutt v. City of Reading, Pa.*, No. CIV.A. 13–4559, 2014 WL 5390428, *4 (E.D. Pa. Oct. 22, 2014).  Thus, an employee seeking

FMLA leave is by nature arguing that he *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he *can* perform the essential functions of the job.

Acker has not demonstrated any dispute of material fact that his untimely phone calls could have sought a reasonable accommodation under the ADA. He failed to follow GM's absence procedure, was disciplined, and has successfully followed GM's absence procedure since. As a consequence, Acker has not proved how GM denied him any accommodation.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.