# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10094
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 20, 2019

Lyle W. Cayce
Clerk

GOLDCROWN PROPERTIES, INCORPORATED; GOLD CROWN
PROPERTIES, INCORPORATED, TEXAS,

     Plaintiffs - Appellants

v.

MUTUAL OF OMAHA BANK, doing business as Community Association
Bank,

     Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-527

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

The chief financial officer of one of the plaintiffs notified the defendant bank that the plaintiffs were fraudulently using the funds in their accounts. The CFO and others also submitted written statements concerning the alleged fraud. The bank placed a temporary hold on the plaintiffs' relevant accounts,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10094

then released the hold six days later.  The plaintiffs brought suit against the bank for alleged damages caused by the hold on their accounts.  The district court granted summary judgment to the bank.  We AFFIRM.


FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff GoldCrown Properties, Inc., which does business as Select Management, manages homeowner and condominium associations. Separating the first word of the other company's name, plaintiff Gold Crown Properties, Inc., Texas manages apartment complexes.  For clarity, we will refer to GoldCrown under its d/b/a name of Select Management, and the manager of apartment complexes as Gold Crown.  Whenever possible, we collectively call them "the Plaintiffs."

Ted Smith was the president and owner of the Plaintiffs.  The Plaintiffs were authorized signatories on numerous accounts at Mutual of Omaha Bank related to the associations and apartment complexes they managed.  In 2011, Smith, as an authorized agent for Gold Crown, executed an enrollment form and Master Signature Card and Agreement with the Bank, in which Gold Crown agreed to be bound by the written Terms and Conditions.  Later, in 2012, Select Management executed a Master Signature Card and Agreement, in which it also agreed to be bound by the Terms and Conditions.  Scarlett Thomas was Select Management's CFO.  She and Ted Smith were identified on the Master Signature Card and Agreement as authorized agents for the various accounts managed by Select Management.  By contract with the Bank, "[e]ach authorized agent shall have the power to receive information or give instructions to Bank concerning any accounts opened under this Agreement."

On January 21, 2015, CFO Thomas telephoned the Bank to report that Smith was engaging in fraud by transferring money from the various accounts related to the managed entities to Select Management's operating account to

2

No. 19-10094

pay its employees.  Thomas specifically identified a $25,000 transfer from an apartment complex's account to Select Management's operating account. Thomas and two accountants also provided written statements regarding alleged fraudulent use of the accounts.  The next day, the Bank put a temporary hold on the accounts.  Six days after placing the hold, the Bank released it as to all accounts.

In January 2017, the Plaintiffs filed suit in state court in Houston.  They claimed breach of contract, violations of the Texas Finance Code, conversion, negligence, and negligence *per se*.  In February 2017, the Bank removed the case to the United States District Court for the Northern District of Texas.  The Bank moved for summary judgment on all claims.  In December 2018, the district court granted the motion.  The Plaintiffs timely appealed.

## DISCUSSION

We give *de novo* review to the grant of summary judgment, applying the same analysis as the district court.  *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155-56 (5th Cir. 2018).  The moving party needs to show "there is no genuine dispute as to any material fact," and that it "is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  To determine if genuine issues of material fact are in dispute, all "inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to" the nonmovant.  *Brand Servs.*, 909 F.3d at 156 (citation omitted).

The Plaintiffs argue the district court erred in not considering its supplemental complaint.  The Plaintiffs, though, filed the new complaint without leave of court after summary judgment briefing was completed and a year and a half after the deadline to amend pleadings.  A plaintiff "cannot simply file documents and declare them to be amended complaints"; amending

3

No. 19-10094

the complaint at that point required "the opposing party's written consent or the court's leave." *Prince-Rivers v. Fed. Express Ground*, 731 F. App'x 298, 300 (5th Cir. 2018) (quoting FED. R. CIV. P. 15(a)(2)). "[F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect." *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003). The district court did not err by refusing to consider the amended complaint filed without leave of court.

The Plaintiffs also contend the district court erred in holding Chapter 95 of the Texas Finance Code does not give rise to a private right of action. They acknowledge that Chapter 95 does not include an explicit private right of action but argue Sections 95.103(a) and 95.104(b) imply one. Under Texas law, whether a constitutional or statutory provision provides a private right of action turns on the intent of the drafters. *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004). Nothing in the sections the Plaintiffs identify supports that the state legislature intended to create a private right of action under Chapter 95 of the Texas Finance Code. The district court did not err in holding Chapter 95 does not include a private right of action. Because Chapter 95 is the only section of the Texas Finance Code pled as a cause of action, it is unnecessary to address other arguments under the Texas Finance Code.

The Plaintiffs argue further that the district court improperly relied on hearsay evidence, namely, an unsworn statement. The Bank offered the unsworn statement of Select Management's CFO to show it had been given notice of alleged wrongdoing, and that notice led to a hold being placed on the Plaintiffs' accounts. The truth of the allegations of fraud is not the relevance of the evidence. "Testimony offered to prove that the party had knowledge or notice is not hearsay because 'the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay.'" *In*

4

*re Morrison*, 555 F.3d 473, 483 (5th Cir. 2009) (quoting *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1230 (5th Cir. 1984)).  The district court did not err in considering the statement.

The Plaintiffs also argue that there was no wrongdoing by Select Management or Gold Crown.  Even if that is so, the point gains the Plaintiffs nothing.  Under its contract with these depositors, the "Bank may suspend or terminate this Agreement or any Service if Bank has reason to believe that Customer or Customer's Agent has engaged in fraudulent or illegal activity."  The unsworn statement of Select Management's CFO put the Bank on notice of alleged fraud or wrongdoing by Smith, acting as agent for the Plaintiffs.  The truth of the matter asserted is irrelevant.  Regardless of whether either Plaintiff was engaged in fraudulent or illegal activity, the district court did not err in granting summary judgment on this issue.

Finally, the Plaintiffs argue the Bank did not have authority to make the $25,000 transfer identified by the CFO and thus was responsible for creating the transaction that led to the temporary hold.  The only evidence identified in the record on this question is an account document for Gold Crown in which the box that would authorize "Wire Transfers" was not checked.  The initial problem with the argument is that there is no evidence that the transfer indicated was a wire transfer.  "Summary judgment cannot be defeated through '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'"  *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (alteration in original) (citation omitted).  Because there is no evidence the Bank breached its contract by initiating the transfer or that it was negligent, it is unnecessary to discuss the economic loss doctrine.

AFFIRMED.