NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2021-0129

PATRICIA CROWE

v.

APPALACHIAN STITCHING COMPANY, LLC

Argued: October 20, 2021
Opinion Issued: December 23, 2021

The Law Offices of Wyatt & Associates, P.L.L.C., of Keene (Timothy Brock, Benjamin Wyatt, and Trevor Brice on the brief, and Timothy Brock orally), for the plaintiff.

Primmer Piper Eggleston & Cramer, PC, of Manchester (Gary M. Burt and Brendan D. O'Brien on the brief, and Gary M. Burt orally), for the defendant.

MACDONALD, C.J.  The plaintiff, Patricia Crowe (Crowe), appeals an order of the Superior Court (Bornstein, J.) granting summary judgment to the defendant, Appalachian Stitching Company, LLC (Appalachian), on Crowe's claim that Appalachian violated the Americans with Disabilities Act (ADA) and RSA chapter 354-A by refusing to accommodate her sciatica.  See 42 U.S.C. §§ 12111 et seq. (2018); RSA ch. 354-A (2009 & Supp. 2020).  We affirm.

I. Background

The following facts are undisputed or are supported by the summary judgment record. Crowe worked at Appalachian as an assembler. The job description for an assembler provides that an employee "[m]ust have the ability to bend, lift and turn, freely." On May 8, 2017, Crowe sent a text to Appalachian's human resources director asking permission to miss work that day because she had spent the night in the emergency room. The human resources director approved the request and instructed Crowe to provide a doctor's note. Crowe returned to work the next day without a doctor's note. While at work, Crowe informed her supervisor that she had been diagnosed with sciatica. Crowe requested the ability to sit until her pain subsided and she could resume standing. Appalachian again requested a doctor's note explaining her condition. On May 12, Crowe provided Appalachian with the emergency room discharge instructions. The discharge instructions stated, "NO LIFTING, BENDING OR STOOPING FOR 1 WEEK." After reviewing the discharge instructions, Appalachian sent Crowe home until she was released to work by her doctor.

Later that day, Appalachian received a note from Crowe's doctor explaining that he had seen her for "non-work related back pain" and asking that she not work for one week. A week later, Appalachian received a second note from Crowe's doctor. The letter stated: "Mrs. Crowe still cannot return to work due to NON-work related back problems. She remains under treatment." Additionally, the doctor stated that he believed she was eligible for benefits under the Family and Medical Leave Act (FMLA). See 29 U.S.C. § 2611(2) (2018). Appalachian responded by letter dated May 22, explaining that Crowe was not eligible because the company was not covered by the FMLA and she did not meet the length-of-service requirement.

After this communication, Crowe alleges that she attempted to call Appalachian on either May 23 or 24; it is uncontested that Appalachian received no follow-up from Crowe's doctor. Appalachian's employee manual states that "[e]mployees who are absent from work for three consecutive days without calling in will be considered to have voluntarily quit." On June 1, 2017, after Crowe missed work for eight days without providing an update on her condition, Appalachian determined that she had voluntarily quit.

In this case, Crowe alleges that Appalachian violated the ADA and RSA chapter 354-A by refusing to allow her to work in a manner contrary to her doctor's instructions and by ultimately terminating her employment. After discovery, Appalachian moved for summary judgment, which Crowe opposed. The trial court granted summary judgment to Appalachian on the ground that Crowe had not established she was a "qualified individual" under the ADA or RSA chapter 354-A. This appeal followed.

II.  Analysis

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party.  New London Hosp. Ass'n v. Town of Newport, 174 N.H. 68, 71 (2021).  If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision.  Id.  An issue of fact is "material" for purposes of summary judgment if it affects the outcome of the litigation under the applicable substantive law.  Id.  We review the trial court's application of the law to the facts de novo.  Id. at 71-72.  To the extent we are required to interpret applicable statutes, our review is de novo.  Id. at 72.

The trial court concluded that, for the purposes of deciding this case, there was no relevant difference between the ADA and RSA chapter 354-A, and neither party challenges that conclusion.  Thus, resolving this case requires us to interpret the ADA.

The ADA protects only "qualified individuals."  42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (emphasis added)); see also RSA 354-A:7, VII (2009) (making it unlawful for employer not to make reasonable accommodations for limitations of a qualified individual).  Accordingly, a threshold issue in any ADA claim is whether the plaintiff is a "qualified individual."

A "qualified individual" is someone who "can perform the essential functions" of the job, "with or without reasonable accommodations."  42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m) (2020).  Consequently, to determine whether a plaintiff is a qualified individual, one must determine what job functions are essential.  See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).  Essential functions are the "fundamental job duties of the employment position the individual with a disability holds or desires.  The term 'essential functions' does not include the marginal functions of the position."  29 C.F.R. § 1630.2(n)(1) (2020).

The ADA provides that "consideration shall be given to the employer's judgment as to what functions are essential, and if an employer has prepared a written job description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  42 U.S.C. § 12111(8); see also RSA 354-A:2, XIV-a (2009).  The existence of a job description, although highly persuasive, is not conclusive.  See Deane v. Pocono Medical Center, 142 F.3d 138, 148 (3d Cir. 1998) ("[T]he job

3

description is not . . . incontestable evidence that unassisted patient lifting is an essential function of [a nurse's] job."). The United States Equal Employment Opportunity Commission's regulations implementing the ADA identify several factors to consider when determining what constitutes a job's essential functions, including, but not limited to: amount of time spent on the job performing the function, consequences of not requiring the function, work experience of past incumbents, and work experience of current incumbents. See 29 C.F.R. § 1630.2(n)(3) (2020).

A court must also inquire into whether employees actually perform the job function at issue. See Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995) ("The initial inquiry into whether a job requisite is essential is whether an employer actually requires all employees in the particular position to perform the allegedly essential function."); see also 29 C.F.R. § 1630.2(n)(3). The specific personal experience of the plaintiff alone, however, is of no consequence in the essential functions inquiry. Knutson v. Schwan's Home Service, Inc., 711 F.3d 911, 915 (8th Cir. 2013). Instead, the plaintiff must produce competent evidence, other than self-serving testimony, that raises a genuine issue of material fact about what constitutes an essential job function. See id.; see also Cruz v. McAllister Bros., Inc., 52 F. Supp. 2d 269, 284-85 (D.P.R. 1999) (concluding plaintiff's testimony that he did not need to do physical labor was insufficient to create genuine issue of material fact as to whether physical labor was an essential function of his job). Courts impose this burden because the language of the ADA grants employers significant discretion to determine essential job functions. See 42 U.S.C. § 12111(8) (providing that "consideration shall be given to the employer's judgment as to what functions are essential"); Champagne v. Servistar Corp., 138 F.3d 7, 14 (1st Cir. 1998) ("Under the ADA, [a company] has substantial leeway in defining the essential functions of its . . . positions.").

In this case, Appalachian presented a job description as well as the testimony of its general manager and floor supervisor to support its contention that the ability to "bend, lift and turn, freely" was an essential job function. Crowe, however, presented no evidence other than her own testimony that she did not need to bend, lift or stoop on the job. The trial court, therefore, correctly concluded that Crowe had not created a genuine issue of material fact regarding the essential functions of an assembler. See Knutson, 711 F.3d at 915 (concluding plaintiff's testimony that he did not need to drive a delivery truck to manage a depot was insufficient to raise a genuine issue of material fact).

Because bending, lifting, and turning freely was an essential function of Crowe's job, we now consider whether the trial court correctly determined that she was not a qualified individual. Employers are entitled to rely upon the objective medical evidence available to them when determining whether an

4

employee is "qualified" under the ADA.  See Alexander v. Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003) (explaining that employer may rely on doctor's letter prohibiting employee from engaging in certain activities).

Here, the hospital discharge instructions provided to Appalachian explicitly stated, "NO LIFTING, BENDING OR STOOPING FOR 1 WEEK." Therefore, the decision to send Crowe home to recover did not violate the ADA. See id. at 727 ("The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden."). Whether Crowe adequately performed her job during the three-plus days that she worked prior to providing a doctor's note to Appalachian is of no consequence.  See id.; see also Jones v. Walgreen Co., 765 F. Supp. 2d 100, 108 n.3 (D. Mass. 2011) (explaining that in a case where the plaintiff ignored her doctor's medical restrictions, her employer is "not obligated to offer an 'accommodation' to an employee that is contrary to medical advice and would place the employee at risk").

On appeal, Crowe argues that she could have performed the essential functions of her job if Appalachian had not sent her home and, instead, continued to allow her to sit as requested.  An employer, however, does not need to provide futile or ineffective accommodations.  See US Airways, Inc. v. Barnett, 535 U.S. 391, 400 (2002) ("[T]he word 'accommodation' . . . conveys the need for effectiveness.  An ineffective 'modification' or 'adjustment' will not accommodate a disabled individual's limitations.").  Here, Crowe's request to sit constitutes an ineffective modification because it does not further her ability to perform the essential functions of bending or lifting.  See id.

Once Crowe was on leave, Appalachian was entitled to rely on the doctor's evaluation that Crowe was unable to return to work.  See Northland Inn, 321 F.3d at 727.  As neither party disputes that attendance is an essential function of an assembler's job, Crowe was not a "qualified individual" while she remained unable to work.  See Peyton v. Fred's Stores of Arkansas, Inc., 561 F.3d 900, 903-04 (8th Cir. 2009) (holding that employee who was unable to work and could not tell employer when she would return to work was not a qualified individual at the time of her termination).

Finally, although a request for leave can, in some circumstances, trigger an employer's obligation to make reasonable accommodations under the ADA, see, e.g., Dark v. Curry Cty., 451 F.3d 1078, 1090 (9th Cir. 2006), Crowe's doctor's inquiry about the availability of FMLA was not such a request.  See Waggel v. George Washington University, 957 F.3d 1364, 1372 (D.C. Cir. 2020) (explaining that an employee's conversations about medical leave with her supervisor did not constitute a specific request for accommodations under the ADA); Acker v. General Motors, L.L.C., 853 F.3d 784, 791 (5th Cir. 2017) ("[A] request for FMLA leave is not a request for a reasonable accommodation under the ADA.").

5

The FMLA and the ADA offer different statutory relief and a request for one does not automatically equal a request for the other. See Acker, 853 F.3d at 791-92. An inherent conflict exists between the eligibility requirements of the ADA and FMLA because "an employee seeking FMLA leave is by nature arguing that he cannot perform the functions of the job while an employee requesting a reasonable accommodation [under the ADA] communicates that he can perform the essential functions of the job." Id. Thus, the inquiry into whether Crowe was eligible for FMLA leave did not, as a matter of law, constitute a request for reasonable accommodations under the ADA. See Waggel, 957 F.3d at 1372.

Accordingly, the trial court correctly determined that Appalachian was entitled to summary judgment on Crowe's ADA and RSA chapter 354-A claims.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.