# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2021

Lyle W. Cayce
Clerk

No. 20-20591

Ida Johnson Houston,

*Plaintiff—Appellant*,

*versus*

Texas Department of Agriculture; Commissioner Sid Miller, *in his official capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-4431

Before King, Higginson, and Wilson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Ida Houston, a former state employee at the Texas Department of Agriculture ("TDA"), alleges that she was fired in retaliation for exercising her rights under the Family and Medical Leave Act ("FMLA") and, similarly, discriminated against under the Rehabilitation Act. Houston suffers from lupus and other illnesses.

No. 20-20591

The district court granted TDA's motion for summary judgment,[1] concluding that TDA had established legitimate, nondiscriminatory reasons for Houston's termination and that Houston failed to raise a disputed material fact showing that those reasons were pretextual.[2] Houston appeals.

I.

The district court recounted the facts as follows, which are largely undisputed on appeal:

> Ida Johnson Houston began working as a Program Review Specialist for Defendant Texas Department of Agriculture ("TDA") in June 2012. Houston worked in TDA's Food and Nutrition Division and audited participants in the Child and Adult Food Care Program and Summer Food Service Program, both of which receive federal funding. Houston's responsibilities required on-site inspections to observe and confirm that the sites were complying with state and federal regulations. Houston suffers from lupus, anemia, and other illnesses, requiring her to be absent from work and sometimes take leave under the Family Medical and Leave Act [sic] ("FMLA").
>
> In January 2016, Houston returned to her position after a long-term medical leave and submitted a request for accommodations permitting her to telework and to work a compressed workweek. TDA granted the request in part, allowing Houston to work four ten-hour days. TDA denied the telework request because Houston's duties could not be performed solely from home due to the on-site inspections; TDA's strict policy concerning telework, which was updated in 2015, grants such requests only in "extraordinary

---

[1] *Houston v. Tex. Dep't of Agric.*, No. CV H-18-4431, 2020 WL 6700615 (S.D. Tex. Oct. 12, 2020).

[2] *Houston*, 2020 WL 6700615, at *7—8.

circumstance[s]"; and Houston needed training to improve performance. According to Houston, she was not given a reason for the denial, and she also maintains that she had been allowed to telework from 2012 until she took medical leave in 2015.

In August 2016, Houston's manager, Karen Cade, gave Houston a written warning for "failure to meet expectations," a "pattern of excessive absenteeism and tardiness," "inadequate job performance," and insubordination. TDA gave Houston the opportunity to provide a rebuttal, which she provided, and TDA amended the warning to delete some of the absences and tardy arrivals. In October 2016, Cade gave Houston another written warning for leaving work early and arriving late; accruing overtime without supervisor approval; late arrivals to sites being audited; and performance issues including failure to submit accurate and timely administrative reviews, failure to follow TDA's travel policy, and insubordination. Houston again was given the opportunity to provide a rebuttal to the warning, but she provided none.

TDA gave Houston another written warning in April 2017 because of her failure to improve on the issues documented in the previous warnings. The April warning listed dates of absences and tardy arrivals to both the office and site visits, as well as late or incomplete assignments, and notified Houston that she was being placed on a ninety-day probation period, ending July 27, 2017, during which she needed to improve her performance or face discipline up to and including termination. Houston provided a rebuttal to this warning, but no amendments were made. About mid-way through the probation period, on June 7, 2017, Cade gave to Houston a written progress report on her probation documenting that Houston so far had "failed to meet the expectation specified in the written warning-probation memorandum." Houston again provided a rebuttal to this memo, but no changes were made.

No. 20-20591

When the probationary period ended, TDA informed Houston that management was assessing her progress. Cynthia Mendoza, Administrator for Human Resources; Angela Olige, Assistant Commissioner for Food and Nutrition; Susan Maldonado, Deputy General Counsel; and Tracy Mueck, Administrator for Food and Nutrition, evaluated Houston's progress and ultimately decided to discharge Houston because of her failure to correct her performance deficiencies over the course of her probation, excessive absenteeism and tardiness unrelated to protected FMLA leave, and her insubordination. On August 11, 2017, Mendoza directed Mueck to prepare a termination memo to be given to Houston on August 14. But Houston called in sick on August 14 and took FMLA leave from August 14-16 for her illness. Her termination notice was thus delayed until August 17 when she returned to work.[3]

These facts are derived from the uncontroverted documents submitted by both parties.[4]

Houston commenced this suit against the TDA asserting various employment, disability, and discrimination claims. Following TDA's motion to dismiss, Houston filed a first amended complaint—the operative complaint here—adding defendant Commissioner Sid Miller, sued in his official capacity, and adding a disability discrimination claim under the

---

[3] *Houston*, 2020 WL 6700615, at *1–2.

[4] These include all of the written documentation of Houston's performance evaluations: the August 2016 first written warning, rebuttal, and October 3, 2016 amendment, the October 27, 2016 written warning, the April 27, 2017 written probation warning and rebuttal, the June 7, 2017 probation follow up and rebuttal, and the internal emails and assessments of Houston following the end of her 90-day probationary period, prior to her August 17, 2017 termination.

No. 20-20591

Rehabilitation Act.  The district court granted in part and denied in part the defendants' renewed motion to dismiss.[5]

On June 12, 2020, the defendants moved for summary judgment on Houston's remaining two claims: (1) her retaliation claim under the FMLA, 29 U.S.C. § 2601 *et seq.*, and (2) her discrimination claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*  On October 12, 2020, the district court granted the motion, dismissed Houston's claims, and entered final judgment against Houston.  On November 12, 2020, Houston timely filed her notice of appeal of the summary judgment order.

## II.

This court "review[s] a grant of summary judgment de novo, applying the same standard as did the district court."  *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

"A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion."  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).  All facts and evidence are

---

[5] The defendants moved to dismiss Houston's Title VII and ADA claims as time-barred and to dismiss the FMLA claims as barred on sovereign immunity grounds, which Houston opposed.  The district court granted the motion in part, dismissing the Title VII and ADA claims as time-barred, and dismissing the FMLA claims for monetary relief.  But, under *Ex Parte Young*, 209 U.S. 123 (1908), the district court permitted the claims for reinstatement or other prospective relief to go forward.  The district court denied the motion as to the Section 504 claim under the Rehabilitation Act.  None of these rulings is at issue in this appeal.

No. 20-20591

construed "in the light most favorable to the nonmoving party," and "a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.*

"Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Summary judgment cannot be defeated through '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (alteration in original) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

## III.

Houston appeals only the district court's order granting summary judgment to defendants on her FMLA and Rehabilitation Act claims. Houston primarily argues that her termination was retaliatory for taking FMLA leave. Houston concedes that her Rehabilitation Act claim is contingent on the success of her FMLA retaliation claim and whether she satisfied her burden to show a dispute of material fact regarding whether TDA's stated reasons for termination were pretextual.

Retaliation claims under the FMLA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Wheat*, 811 F.3d at 705. Under that framework, the plaintiff must first establish a prima facie retaliation case by showing three elements: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the

adverse decision was made *because* he sought protection under the FMLA." *Acker*, 853 F.3d at 790 (emphasis added) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2006)).  If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). In the third step of the *McDonnell Douglas* framework, the burden shifts back to the plaintiff to "show by a preponderance of the evidence" that the defendant's reason is a pretext for retaliation. *Id.*

The district court concluded that, "given the relatively low threshold to establish a *prima facie* case, Houston has minimally satisfied her burden." *See also Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) ("[T]o establish a *prima facie* case, a plaintiff need only make a very minimal showing.") (alteration in original).  Upon review, we assume—but do not decide—that Houston has established a prima facie case of discrimination under the FMLA.

Pursuant to the second step of the *McDonnell Douglas* framework, TDA has asserted its "legitimate, non-discriminatory reason[s]," *Richardson*, 434 F.3d at 333, for terminating Houston's employment were "based on three written warnings, the lack of improvement of performance during the probation period, and recent poor performance and insubordination."

Primarily, the parties in this matter dispute the third step of the *McDonnell Douglas* framework: whether TDA's reasons for firing Houston were pretext for retaliation because Houston sought protection under the FMLA. With respect to this step, Houston argues the district court erroneously granted summary judgment because a reasonable juror could

conclude that her termination was actually retaliatory based on taking disability-based FMLA leave.

Houston argues on appeal that disputes of material fact do exist as to: (1) TDA's stated reasons for her termination; (2) TDA's deviation from its written policies; and (3) TDA's refusal to allow her to telework as a reasonable accommodation for her lupus, thereby "set[ting] her up for failure." She also argues that her supervisor's comments suggesting that she find a new job were erroneously dismissed as "stray remarks" by the district court.

Houston's first argument is unavailing. While the August 17 termination *memo* does not include any reasons for Houston's termination, TDA's reasons for terminating Houston were nonetheless contemporaneously documented, especially during the probationary period leading up to her termination.[6] These include the written warnings from August 2016 (amended in October 2016) and the probationary warning in April 2017. Specifically, as to Houston's work performance, this also included an August 3, 2017 email with a "Chart of Progress" related to Houston's specific work assignments during her probationary period, and the corresponding deficiencies and comments. These documents further align with Olige's deposition testimony that Houston was terminated in part due

---

[6] In her reply brief, Houston argues "there are no documents to support a termination meeting prior to her taking FMLA leave," and "[a]s such, this panel is not required to believe there was a termination meeting." While there is some ambiguity as to the method and structure of this meeting—for example, Mendoza's declaration states, "To the best of my knowledge, a meeting occurred on August 11, 2017,"—it does not contradict the rest of the uncontroverted documentary evidence relating to the termination reasons discussed—or at least, emailed—prior to the planned August 14 termination of Houston. An absence of further documentation does not show a dispute as to whether the *reasons* behind Houston's termination were pretextual.

to the "timeliness" and "accuracy of her work" including "[r]eviews not being completed, reviews being completed inaccurate [sic], [and] reviews not being completed on time."

Next, Houston argues that TDA deviated from its disciplinary policies, showing pretext. This court has explained that "[f]ailure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives." *Grubb v. Sw. Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008). However, in some circumstances, "when an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015).

The Performance Plan policy describes TDA's appraisal system, which it uses "to document the degree to which employees meet job performance and professional competencies." The policy notes that "Supervisors shall document performance on an on-going basis"; that "employees are allowed (3) business days to write their rebuttal" following an appraisal; and that "[i]f an employee receives an appraisal rating of 2.49 or below, the supervisor must provide the employee with a Performance Improvement Plan." Houston argues that TDA deviated from this policy by not placing Houston on a Performance Improvement Plan ("PIP"), which would have afforded her six months from the appraisal date to correct or remedy performance related issues, or by not "giv[ing] her another appraisal, rating her 2.49 or below and following-up with a [PIP]."

Houston is correct that she did not receive an appraisal rating of 2.49 or below, thus triggering the need for a PIP.[7] However, this does not indicate

---

[7] A rating in the 1.50—2.49 range indicates that an employee "sometimes" meets expectations: "performs duty in a manner sometimes not meeting expected results."

that TDA violated the terms of its policies. Nor does Houston elaborate on what further coaching or monitoring a PIP would have entailed—in order to "provide help to improve performance,"—that was not otherwise provided in the year-long warnings-and-rebuttals process she received.

As to the Disciplinary Policy, Houston argues that TDA skipped steps in the "progressive disciplinary policy," including by not "verbally counsel[ing] Houston before it moved to written warning, then written-warning probation and then termination," and failing to explain why it did not suspend Houston rather than terminate her. Contrary to Houston's assertions, the Disciplinary Policy itself does not mandate a specific order of escalating consequences. Rather, it states that the "types of disciplinary actions that *may* be taken *include, but are not limited to*": an initial warning, written warning, probation, suspension, and termination. Additionally, as defendants assert, "Houston received [these actions] in accordance with TDA's policy." Nor does it violate the policy that TDA terminated rather than suspended Houston, contrary to Houston's argument that TDA "could have suspended Houston" and that "[s]uspension would have been more plausible than termination."

Additionally, Houston points to the policy's requirement that "[e]very aspect of the process . . . shall be documented," and argues that TDA failed to document the "sixty alleged violations prior to Houston's written warning in August 2016." Though the sixty alleged violations were not documented contemporaneously, they were included in her August 2016 written warning, and Houston was given—and took—the opportunity to contest those violations. Thus, TDA complied with the policy's documentation requirement.

Moreover, none of the asserted policy deviations is akin to instances where this court has concluded such deviations were evidence of pretext. For

example, this court has concluded pretext may exist where, instead of following the disciplinary policy to provide warnings "so that an employee may take corrective steps," the employer either failed outright to provide such warnings or otherwise "manufactured steps in the disciplinary policy by issuing written warnings to paper his file after it had decided to fire him." *Goudeau*, 793 F.3d at 477; *see also Laxton v. Gap Inc.,* 333 F.3d 572, 581 (5th Cir. 2003) (holding, in a Title VII pregnancy discrimination case, that evidence was sufficient to create a jury issue on pretext when, among other things, plaintiff's "supervisors never gave her the chance to explain her conduct or improve it" prior to terminating her and noting that if "[the employer] bothered to do so, progress might have been made"); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 (5th Cir. 2000) (evidence that plaintiff "was not given a formal oral warning, a written warning, or a 'corrective action plan,' all of which are required by [the employer's] own internal procedures" prior to being terminated, among other evidence, was sufficient to create jury issue on pretext in ADEA age discrimination case).

Houston next argues that TDA's denial of her telework request was discriminatory and pretextual. From June 2012 through January 2016, Houston was permitted to telework and work a compressed workweek. She concedes this was *not* "an accommodation" for her medical disability but was "part of her regular position terms." When she returned from an extended medical leave in January 2016, these terms were removed. She promptly re-requested, as an accommodation of her disability, to work a compressed, 4-day week ("to take the treatment needed once weekly") and to telework "as needed" ("when joints are swollen and in pain"). TDA approved the compressed schedule but denied the telework request in a one-sentence determination.

As a preliminary matter, Houston does not expressly argue on appeal—and did not argue before the district court—that this 2016 telework

denial itself constitutes an "adverse employment action" under the FMLA. *See Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 212 (5th Cir. 2015) ("The FMLA provides that an employee is entitled to take leave, not to work from home.").

Her principal argument instead is that the telework denial eventually led to her subsequent August 2017 termination. For example, she argues that by denying her telework, "TDA essentially set her up for failure to terminate her," and this shows "a pattern and plan to terminate her." Houston argues "[t]he jury is entitled to see this scheme." Absent specific evidence in the summary judgment record, these are merely "speculation, improbable inferences, [and] unsubstantiated assertions" that do not defeat summary judgment. *Acker v. Gen. Motors*, L.L.C., 853 F.3d 784, 788 (5th Cir. 2017). The district court, in a footnote, likewise rejected that "her denial of a telework accommodation is evidence of retaliation."

As a final note, Houston argues that the district court discredited her references to a "Remote Worker Policy." Houston asserts that this policy was revised in February 2016, *after* her telework accommodation was denied. This *remote working* policy is largely irrelevant to the *teleworking* policy under which Houston's accommodation request was denied. Moreover, as the district court concluded, "[t]his 'Remote Worker Policy' is not authenticated and its provenance is unknown." Indeed, this "Remote Worker Policy" shows conflicting "revised" dates—one in February 2013 and another in February 2016—and applies only to workers "assigned to work from a remote site, such as a home office, rather than . . . [an] office."

Finally, Houston argues that statements made by her supervisors "show their desire to force Houston to quit," and thereby show pretext. She challenges the district court's conclusion that they were "stray remarks," and therefore insufficient to show pretext. However, Houston has neglected

substantively to brief this issue on appeal, therefore we deem this issue to be abandoned. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."); *see also Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (failure to identify an error in the district court's order "is the same as if [appellant] had not appealed that judgment").

We conclude that Houston's arguments fail to raise a disputed material fact of pretext regarding her termination. Accordingly, we find the district court was correct to grant summary judgment on Houston's FMLA claim.

IV.

The Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

Rehabilitation Act claims are also analyzed under the *McDonnell Douglas* burden-shifting framework. *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014). To establish a prima facie case of discrimination under the Rehabilitation Act, "a plaintiff must prove that (1) she is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that she was discriminated against 'solely by reason of her or his disability.'" *Hileman v. City of Dall.*, 115 F.3d 352, 353 (5th Cir. 1997) (citing 29 U.S.C. § 794(a)). Under the Rehabilitation Act, an employer is liable only if the discrimination occurred "solely by reason of her or his disability," not when it is simply a "motivating factor." *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002).

No. 20-20591

Houston concedes that her Rehabilitation Act claim is "intimately connected" to her FMLA retaliation claim, and that "[t]o avoid redundancy and duplication, Houston incorporates her argument for pretext under the FMLA argument." Thus, for the same reasons Houston's FMLA claim fails, her Rehabilitation Act claim likewise fails.

V.

For the foregoing reasons, the district court's order granting summary judgment is AFFIRMED.