# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2022

Lyle W. Cayce
Clerk

No. 21-11028

Harrison Company, L.L.C.,

*Plaintiff—Appellee*,

*versus*

A-Z Wholesalers, Incorporated; Barkat G. Ali,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:19-CV-1057

Before Smith, Duncan, and Oldham, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Harrison Co., L.L.C. executed a credit agreement with A-Z Wholesalers, Inc. to supply A-Z with tobacco products and other goods. Barkat Ali personally guaranteed A-Z's payment. A-Z fell behind $2.6 million on payments for the goods it received, so Harrison sued A-Z and Ali. The district court granted summary judgment for Harrison. We affirm.

No. 21-11028

I.

A.

Harrison Co., L.L.C. is a food distributor based in Bossier City, Louisiana. It maintains a fully staffed warehouse there, where it stores its inventory and fulfills customer orders.

In March 2011, Harrison and A-Z Wholesalers, Inc., a wholesaler of tobacco products and sundries with warehouses in Dallas and Waco, Texas, executed a credit agreement for Harrison to supply goods. A-Z's president Barkat Ali personally guaranteed A-Z's performance in a separate guaranty agreement. Harrison began supplying goods to A-Z, fulfilling each order from its Bossier City warehouse and delivering the goods for both A-Z's Dallas and Waco accounts to A-Z's Dallas warehouse. Harrison sent A-Z an invoice for each order.

In 2014, Imperial Trading Co., L.L.C. acquired Harrison's parent company Noble Feldman, Inc. and became Harrison's sole member. In October 2014, Wayne Baquet, president of both Harrison and Imperial, sent a letter "in [his] capacity as Harrison's President" to all Harrison customers. The letter, printed on Imperial letterhead, reads, "We are pleased to announce that effective, September 1, 2014, Harrison Company, Bossier City has legally become a division of Imperial Trading Co., LLC. This means we are one company, comprised of four divisions[,] [including] Imperial – Elmwood, Louisiana, [and] Imperial – Bossier City, Louisiana . . . ." It continues, "The acquisition of the Harrison Company in 2008 and now its official name change to Imperial – Bossier City further strengthens our ability to service your stores now and into the future. Your Bossier City team will continue to provide you customer driven service."

In 2015 and 2016, Imperial and Harrison consolidated accounting systems and bank accounts for efficiency and economy. As part of this

consolidation process, invoices sent to A-Z started to include Imperial's logo with Bossier in smaller font. The Bossier notation tells Imperial "internally for accounting purposes, that the sales and revenue are attributed to Harrison." While invoices instructed A-Z to remit payment to Imperial, A-Z receipts were credited on Harrison's books.

The consolidation of the accounting systems also resulted in A-Z's receiving a new account number. From 2015 to 2016, A-Z's invoices listed both its new account number and its old Dallas and Waco account numbers. The old account numbers were removed from the invoices in August 2016.

Beginning in 2017, each delivery to A-Z included a "manifest" that, like the invoices, included Imperial's logo with "Bossier" in smaller font. A Harrison truck driver and an A-Z representative signed each manifest, evidencing delivery from Harrison's Bossier City warehouse to A-Z's Dallas warehouse. The signature statement provided, "I acknowledge receipt of the product(s) listed on the above referenced invoice(s) and by signing this document agree that the company and/or person listed below is financially responsible for paying the amount of the invoice(s), and all costs and attorney fees associated with any collection efforts, to Imperial Trading Co., Inc."

Although Harrison and Imperial share "common upstream ownership" by the same management trust, they have "always" been "separate entities." The trust's practice has been to use "different brand names in different territories" when acquiring and integrating new companies. For example, if a caller dials Harrison's main phone number, a recording states, "Thank you for calling Imperial Trading." And while some of Harrison's delivery trucks display "Harrison" and "Imperial," Harrison employs the drivers and registers the vehicles. Imperial maintains its own warehouse in Harahan, Louisiana, has a separate customer base, and fulfills orders from its own inventory. Harrison and Imperial file independent tax

returns, invoices are differentiated internally based on the customers, and payments are credited on either entity's general ledger.

By the end of 2017, A-Z accumulated an unpaid balance of over $3 million. Harrison tried to work with A-Z and Ali to cure the default while continuing to fill orders, to no avail. Harrison's records list A-Z's unpaid balance under "accounts receivable." A-Z does not dispute accounting of approximately $2.6 million in unpaid goods.

In January 2018, Imperial filed a UCC financing statement asserting a lien on A-Z's assets. In March 2019, Imperial's outside counsel sent a demand letter to A-Z and then sued A-Z and Ali on Imperial's behalf in Texas state court. Brad Prendergast, CFO of Imperial and secretary/treasurer of Harrison, explained that counsel's assertion that A-Z owed Imperial money was a mistake. Prendergast and Baquet had "hired and relied on outside counsel"—counsel shared by Harrison and Imperial—to "make demand on and, if no response, sue A-Z and Barkat Ali for the amounts due [to] Harrison." Upon realizing the mistake, counsel nonsuited the case.

## B.

In May 2019, the same law firm sent a demand letter on Harrison's behalf to A-Z and Ali. Counsel then filed this suit, asserting claims for breach of contract and breach of guaranty. The district court denied A-Z and Ali's motion to join Imperial as a necessary party. *Harrison Co. v. A-Z Wholesalers, Inc.*, No. 3:19-CV-1057-B, 2020 WL 918749 (N.D. Tex. Feb. 26, 2020). It also denied the parties' cross-motions for summary judgment, finding factual disputes over whether "A-Z missed any of the payments owed to [Harrison]." *Harrison Co. v. A-Z Wholesalers, Inc.*, No. 3:19-CV-1057-B, 2020 WL 5526555, at *6 (N.D. Tex. Sept. 15, 2020). In clarifying its ruling, the court noted that there was a fact dispute "as to whether A-Z's debt is owed to Harrison or Imperial due to the merger of Harrison and Imperial."

*Harrison Co. v. A-Z Wholesalers, Inc.*, No. 3:19-CV-1057-B, 2021 WL 913286, at *3 (N.D. Tex. Mar. 10, 2021).

As the parties prepared for trial, the district court reversed course, noting, "we need to just test [the] legal issues out and see if . . . at the end there's a fact issue, because I just don't think there is." The parties then refiled their summary judgment motions.

The district court denied A-Z and Ali's motion and granted Harrison's motion. *Harrison Co. v. A-Z Wholesalers, Inc.*, No. 3:19-CV-1057-B, 2021 WL 2857248 (N.D. Tex. July 8, 2021). It found the evidence undisputedly proved that Harrison both supplied and delivered the goods to A-Z under the credit agreement and is the beneficiary of the guaranty. *Id.* at *7–9. The district court awarded Harrison "damages totaling $2,575,335.73 plus reasonable attorneys' fees and interest to be determined at a future time." *Id.* at *10. A-Z and Ali timely appealed.

## II.

We review a summary judgment *de novo. United States v. Bittner*, 19 F.4th 734, 740 (5th Cir. 2021) (citation omitted), *cert. granted*, 142 S. Ct. 2833 (2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant satisfies this burden, the nonmovant "must present competent summary judgment evidence of the existence of a genuine [dispute] of fact." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (citations omitted). This requires more than "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021) (alteration and citation omitted). "We view the evidence in the light

No. 21-11028

most favorable to the nonmovant and draw all reasonable inferences in its favor." *Bittner*, 19 F.4th at 740 (citation omitted).

## III.

A claim for breach of contract under Texas law[1] requires the plaintiff to show (1) a valid contract, (2) performance by the plaintiff as contractually required, (3) breach by the defendant, and (4) damages due to the breach. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (citation omitted). To recover on a breach of guaranty claim, the plaintiff must prove "(1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 199 (5th Cir. 2012) (citation omitted).

The parties agree that the sole issue is whether Harrison performed under the credit agreement by supplying goods to A-Z—element two for the breach of contract claim and element three for the breach of guaranty claim. A-Z and Ali argue there is a genuine dispute of material fact "as to whether the sales that *Harrison* is seeking payment for were, in reality, sales from *Imperial* following the merger of the two companies." We disagree.

---

[1] The district court applied both Texas and Louisiana law. A-Z and Ali claim Texas law applies. Harrison claims there is no "substantive difference between Texas and Louisiana law" for its claims and so does not dispute applying Texas law. We thus apply Texas law. *See Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n.2 (5th Cir. 2009); *see also R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 221–22 (5th Cir. 2005) (forgoing choice-of-law analysis because contract law of Texas and Louisiana did not conflict); *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009) ("[B]y failing to brief any other state's law, the parties have forfeited any choice of law argument." (citation omitted)).

Harrison introduced competent evidence that it, not Imperial, filled each A-Z order. Daniel Burgos, Harrison's sales manager who oversaw A-Z's account from 2017 to 2019, declared that "every A-Z order Harrison received . . . was filled by Harrison from Harrison's warehouse in Bossier City . . . and that Harrison delivered those products to an A-Z warehouse in Dallas." Christopher McClure, Harrison's director of warehouse operations, declared that since Imperial's 2014 acquisition of Noble Feldman, "every A-Z order was filled by Harrison from its inventory in its Bossier City warehouse." And Scott Faley, Harrison's transportation manager who oversaw trucks out of the Bossier City warehouse, confirmed that "Harrison delivered products for A-Z's Dallas and Waco accounts to A-Z's Dallas warehouse" and every delivery to A-Z "was made by Harrison in a Harrison truck."

A-Z and Ali first argue that the guaranty did not survive Imperial's acquisition of Noble Feldman, citing *Marshall v. Ford Motor Co.*, 878 S.W.2d 629 (Tex. App.—Dallas 1994, no writ). But *Marshall* is inapposite. There, the court held a guaranty agreement for payment of goods did not survive a short-form merger between the goods-supplying subsidiary company and its parent company, where the subsidiary ceased to exist. *Id.* at 632. Here, Harrison and Imperial never "merged" and remain two separate entities. Imperial's upstream acquisition of Noble Feldman accordingly had no effect on Harrison's guaranty agreement.

A-Z and Ali next point to evidence that they claim shows a fact dispute. This evidence generally falls into two categories: (1) Imperial's mistaken assertion of claims against A-Z and Ali, and (2) efforts to promote Imperial's brand and to integrate Harrison's accounting services into Imperial's after Imperial acquired Noble Feldman. None of this evidence creates a dispute as to whether Harrison filled the orders to A-Z.

No. 21-11028

Imperial's mistaken assertion that A-Z owed it money does not show that Imperial supplied the goods. Imperial's demand letter and UCC filing resulted from a mistake by Imperial and Harrison's shared counsel. Upon realizing the mistake, "counsel recommended non-suiting the State Court Case and refiling this case, which Harrison did." Any assertions made in that case are not binding. *Sinclair Refining Co. v. Thompkins*, 117 F.2d 596, 598 (5th Cir. 1941) (pleadings "bind unless withdrawn or altered by amendment" (citations omitted)); *cf. Heritage Bank v. Redcom Lab'ys, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) ("[J]udicial admissions are not conclusive and binding in a separate case from the one in which the admissions [were] made." (citation omitted)). As the district court found, the mistake was "entirely plausible" given Harrison and Imperial's business relationship and shared accounting systems. *Harrison*, 2021 WL 2857248, at *5.

Nor is a dispute created by evidence concerning efforts to promote Imperial's brand and to integrate Harrison's and Imperial's accounting systems. Baquet's October 2014 letter simply explains Harrison's efforts to promote Imperial. This included using Imperial's name on Harrison's trucks and phone line. But as the district court explained, this "does not mean that Imperial—a separate entity—became the seller of A-Z's goods." *Id.* at *2.

As to the invoices directing payment to Imperial, it is undisputed that Imperial's and Harrison's shared accounting staff applied each payment from A-Z to Harrison's account. And A-Z's unpaid balance is listed under Harrison's accounts receivable. A-Z and Ali claim they could not have known their payments were credited to only Harrison's books. But their subjective belief that they were paying Imperial does not create a genuine dispute of material fact over who supplied the goods. *See, e.g.*, *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996) (collecting cases).

8

No. 21-11028

Imperial and Harrison are—and always have been—separate entities with their own employees, customers, and warehouses. As the district court explained, A-Z and Ali do not allege, let alone present evidence, "that A-Z experienced any changes in ordering procedures, pricing, delivery schedules, type or brand of goods, inventory availability, or any other indicia that . . . [shows] it was no longer doing business with Harrison." *Harrison*, 2021 WL 2857248, at *6. The district court did not err in granting summary judgment.[2]

## IV.

The district court's judgment is AFFIRMED.

---

[2] Harrison requests a remand "to allow the district court to determine Harrison's claims for attorneys' fees and interest." We need not do so because the district court has always retained jurisdiction over such matters. *See, e.g.*, *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 817 (5th Cir. 1997).